UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

**CV 14 - 3033**

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

TERRELL WALROND,
and NIGEL PHILLIP,

                    Plaintiffs,

          -against-                                           **COMPLAINT**

THE CITY OF NEW YORK,          **ROSS, J.**
THOMAS McDONNELL,
and TREBOR EVANS
                                                              **PLAINTIFFS DEMAND**
                    Defendants.                               **A TRIAL BY JURY**

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

          Plaintiffs Matthew Nelson and Joshua Bryant, by their attorneys, Reibman &

Weiner, as and for their Complaint, hereby allege as follows, upon information and belief:


                    **PARTIES, VENUE and JURISDICTION**

          1.        At all times hereinafter mentioned, plaintiff Terrell Walrond was an

adult male resident of Kings County, in the State of New York.

          2.        At all times hereinafter mentioned, plaintiff Nigel Phillip was an adult

male resident of Kings County, in the State of New York.

          3.        At all relevant times hereinafter mentioned, defendant City of New

York ("New York City"), was and is a municipal corporation duly organized and existing

under and by virtue of the laws of the State of New York and acts by and through its

agencies, employees and agents, including, but not limited to, the New York City Police

Department ("NYPD"), and their employees.

          4.        At all relevant times hereinafter mentioned, defendant Thomas

McDonnell (Shield 1930), was employed by the City of New York as a member of the
NYPD. Defendant McDonnell is sued herein in his official and individual capacities.

     5.     At all relevant times hereinafter mentioned, defendant Trebor Evans
(Shield 343), was employed by the City of New York as a member of the NYPD.  Defendant
Evans is sued herein in his official and individual capacities.

     6.     This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331,
1343 and 1367, and 42 U.S.C. § 1983.

     7.     Venue is properly laid, pursuant to 28 U.S.C. Section 1391, et seq. in
the Eastern District of New York, where the plaintiffs and defendant City of New York
reside, and where the majority of the actions complained of herein occurred.

## RELEVANT FACTS

     8.     On May 27, 2011, during the afternoon hours, plaintiffs were lawfully
present in the backyard of a private residence on or near East 56th Street and Avenue H in
Brooklyn, New York.

     9.     At this time, McDonnell and Evans, as well as other members of the
NYPD, entered the backyard, and seized and arrested the plaintiffs.

     10.     The defendants were assigned to the Narcotics Bureau Brooklyn South
at the time of their entry into the backyard.

     11.     The defendants did not have a warrant permitting their entry into the
backyard or anywhere else on the premises.

2

12.    The defendants did not seek or receive consent to enter the backyard, nor would it have been reasonable for them to believe that such consent existed.

13.    There were no exigent circumstances that would permit defendants to lawfully enter the backyard, nor would it have been reasonable for them to believe that such exigency existed.

14.    Plaintiffs were not engaged in any unlawful or suspicious activity at the time of defendants' arrival.

15.    Despite the absence of any evidence of wrongdoing on the part of plaintiffs, the defendants formally arrested plaintiffs.

16.    The plaintiffs were both searched at the scene of their arrest and again at the station house. Neither search yielded any evidence of guns, drugs, or contraband.

17.    The decision to arrest plaintiffs was objectively unreasonable under the circumstances.

18.    While plaintiffs were unlawfully imprisoned by the defendants, the defendants completed arrest paperwork which, upon information and belief, alleged that each of the plaintiffs was observed by defendant McDonnell smoking marijuana.

19.    The defendants forwarded these false allegations to the Kings County District Attorney ("KCDA") or the New York City Criminal Court ("NYCCC") in order to justify the arrest and to persuade the KCDA or NYCCC to commence and/or continue the plaintiffs' criminal prosecution.

20.    The defendants knew and understood that the KCDA and the NYCCC

3

were relying on the truthfulness of defendants' claims and statements in order to evaluate whether to commence a criminal prosecution against the plaintiffs. Defendants were aware that the KCDA and the NYCCC assumed that all of the factual statements, claims and allegations that defendants relayed to the KCDA and the NYCCC were truthful in all material respects.

21.     Defendants further knew and understood that they were obligated to provide any and all exculpatory information to the KCDA and the NYCCC, and that defendants were expected to turn over to or otherwise provide the KCDA with all material information concerning the arrest, regardless of whether it was inculpatory or exculpatory.

22.     Evans swore out a criminal complaint against plaintiff Walrond in which he alleged that he was told by McDonnell that McDonnell observed Walrond in the driveway in physical possession of marijuana in a public place, and that McDonnell also observed Walrond drop it to the ground.

23.     The KCDA, relying entirely on defendants' false representations, initiated the prosecution against Walrond under docket 2011KN042382.

24.     McDonnell swore out a criminal complaint against Phillip in which he alleged that he observed Phillip, at the same time and place as Walrond, also in physical possession of marijuana. McDonnell further alleged that Phillip engaged in disorderly conduct when he screamed curses at the officers at the scene of the arrest, and then again later at the precinct.

25.     The KCDA, relying entirely on defendants' false representations,

4

initiated the prosecution against Phillip under docket 2011KN042273.

26.     All of the above-mentioned allegations were false, including the claims that plaintiffs were seized in the driveway and that the driveway was "a public place," and the defendants knew them to be false at the time the defendants made the false allegations.

27.     Plaintiffs were transported to central booking, where they were held until they appeared for arraignment before a Kings County Criminal Court Judge; Walrond on charges of criminal possession of marijuana, and Phillip on charges of both criminal possession of marijuana and disorderly conduct.

28.     At his arraignment, Walrond accepted an adjournment in contemplation of dismissal. His case was subsequently formally dismissed.

29.     On September 8, 2011, the criminal prosecution of Nigel Phillip was dismissed in the interest of justice.

30.     At no time did defendants have probable cause to seize, detain or arrest any of the plaintiffs, nor was it reasonable for the defendants to believe that such cause existed.

31.     At no time did any of the defendants, or any other member of the NYPD, take any steps to intervene in, prevent, or otherwise limit the illegal, unlawful and unconstitutional conduct engaged in by their fellow officers against the two plaintiffs.

32.     The defendants' illegal, unlawful, and unconstitutional actions against the plaintiffs in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number

5

of arrests made without regard to probable cause.

33.    More precisely, under the above-mentioned plan or policy, New York
City Police Officers within the Narcotics Division would routinely arrest all persons found in
any location where they believed contraband was located, regardless of whether there was
any factual basis for the charges. The arresting officer(s) would then make false statements
of fact as to seeing narcotics in plain view or otherwise in the possession of each of the
persons arrested.

34.    The purpose of this plan or policy was to generate large numbers of
arrests to help the NYPD create a false impression of positive activity by their officers.

35.    In addition, the plaintiffs herein allege that members of the Narcotics
Division of the New York City Police Department are evaluated, at least in part, on the basis
of their "activity," which is measured by the number of arrests made, and other, similar
criteria. Thus, members of the Narcotics Division routinely make arrests and engage in other
police conduct without sufficient legal cause in order to raise their levels of "activity" and
improve the perception of their job performance.

36.    The above-mentioned plan or policy has been kept in effect from, at
least, 2006 through, at least, the date of plaintiffs' arrests, despite the municipal defendant's
knowledge that the individuals arrested were not being charged or that there was insufficient
evidence to justify the arrests, or that the arresting officers were seeking to bolster the arrests
with false allegations, and that the prosecuting offices often had found insufficient cause to
justify the imposition of charges or continued prosecution if charges were filed.

6

37.     That at all times relevant herein, the defendants were acting within the scope of their employment, and their acts were done in furtherance of the City of New York's interests and without legal justification or excuse.

## FIRST CAUSE OF ACTION

38.     Plaintiffs repeat the allegations contained in paragraphs "1" through "37" above as though stated fully herein.

39.     The individual defendants willfully and intentionally seized, searched, detained, and arrested plaintiffs without probable cause, and without a reasonable basis to believe such cause existed.

40.     By so doing, the individual defendants, individually and collectively, subjected the plaintiffs to false arrest and imprisonment, unlawful searches of person and property, and denial of due process through the fabrication of evidence, and thereby violated, conspired to violate, and aided and abetted in the violation of plaintiffs' rights under the Fourth and Fourteenth Amendments of the United States Constitution.

41.     By reason thereof, the individual defendants have violated  42 U.S.C. §1983 and caused plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the deprivation of liberty, and the loss of their constitutional rights.

## SECOND CAUSE OF ACTION

42.     Plaintiffs repeat the allegations contained in paragraphs "1" through

"41" above as though stated fully herein.

43.     The defendants' actions in this matter were carried out in accordance with an existing plan or policy created or otherwise condoned by the municipal defendant designed to increase the number of arrests made without regard to probable cause.

44.     More precisely, under this policy or plan, officers within the Narcotics Bureau, including the individual defendants, would, with or without lawfully issued warrants, search social clubs, apartments, and other locations, and, if any contraband was found, routinely arrest all persons found therein, regardless of whether there was any factual basis for the charges. The arresting officer(s) would then make false statements of fact as to seeing narcotics in plain view or otherwise in the possession of each of the persons arrested.

45.     The purpose of this policy or plan was to generate large numbers of arrests to help the NYPD create a false impression of positive activity by their officers.

46.     In addition, members of the Narcotics Bureau are evaluated, at least in part, on the basis of their "activity" which is measured by the number of arrests made, search warrants secured, and other, similar criteria.  Thus, members of the Narcotics Bureau routinely make arrests and engage in other police activity without sufficient legal cause in order to raise their levels of "activity" and improve the perception of their job performance.

47.     The policy or plan was kept in effect from, at least, 2006 through, at least, the date of plaintiffs' arrest, despite the municipal defendant's knowledge that the individuals arrested were not being charged or that there was insufficient evidence to justify the arrests or that the arresting officers were seeking to bolster the arrests with false allegations, and that the prosecuting offices often had found insufficient cause to justify the

8

imposition of charges or continued prosecution if charges were filed.

48.     In October 2011, following a bench trial in New York State Supreme
Court, Kings County, under indictment number 06314-2008, former NYPD narcotics officer
Jason Arbeeny was convicted of planting drugs on two individuals and falsifying arrest
reports. Before issuing a verdict of guilty, the trial judge scolded the NYPD for what he
described as a "widespread culture of corruption endemic in its drug units." The judge
further stated that the testimony demonstrated that the NYPD narcotics divisions maintain a
"cowboy culture" and that he was "shocked, not only by the seeming pervasive scope of
misconduct but even more distressingly by the seeming casualness by which such conduct is
employed."

49.     That at all times relevant herein, the defendants were acting within the
scope of their employment, and their acts were done in furtherance of the City of New
York's interests and without legal justification or excuse.

50.     Defendant City of New York created, approved or condoned the
practice and policy, as carried out by the Narcotics Bureau, of making wholesale arrests
without probable cause in order to create false or misleading arrest numbers.

51.     By reason thereof, defendant has violated 42 U.S.C. §1983 and caused
plaintiffs to suffer emotional and physical injuries, mental anguish, incarceration and the
deprivation of liberty, and the loss of their constitutional rights.

## DEMAND FOR A JURY TRIAL

Pursuant to Fed. R. Civ. P. 38, plaintiffs hereby demand a jury trial of all issues capable of being determined by a jury.

WHEREFORE, the plaintiffs demand judgment against defendants jointly and severally as follows:

i.    on the first cause of action, actual and punitive damages in an amount to be determined at trial;

ii.   on the second cause of action, actual damages in an amount to be determined at trial;

iii.  statutory attorney's fees pursuant to, *inter alia*, 42 U.S.C. §1988 and New York common law, disbursements, and costs of this action; and

iv.   such other relief as the Court deems just and proper.

Dated: New York, New York
       May 14, 2014

LUMER & NEVILLE
Attorneys for Plaintiffs
225 Broadway, Suite 2700
New York, New York 10007
(212) 566-5060

Michael Lumer, Esq. (ML - 1947)

10